Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| CARLOS L. CÁCERES PIZARRO<br><br>Recurrente<br><br>V.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | KLRA202400588 | *Revisión de Decisión Administrativa* procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.:<br>7-60403<br><br>Sobre:<br>Programa Religiosos y Seculares |
|---|---|---|

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Jueza Romero García y el Juez Rivera Torres

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 9 de diciembre de 2024.

El 18 de octubre de 2024, el señor Carlos L. Cáceres Pizarro (en adelante, parte recurrente o señor Cáceres Pizarro) presentó ante este Tribunal de Apelaciones por derecho propio, o *In Forma Pauperis*, recurso de revisión judicial[1]. En su escrito intitulado *Moción en Solicitud de Revisión Judicial,* el recurrente nos solicita que revisemos una determinación del Comité de Clasificación, Custodia y Tratamiento (en adelante, CCT) emitida el 17 de septiembre de 2024 y notificada el 1 de octubre de 2024 por el Departamento de Corrección y Rehabilitación (en adelante, parte recurrida o el DCR). Mediante dicha determinación, se le notificó al recurrente la denegatoria a su petición para participar del *Programa de Desvío, pase Extendido con Monitoreo Electrónico* (en adelante, el Programa), por razón de que este incumple con los criterios de elegibilidad.

---

[1] Según se desprende del escrito, el mismo fue suscrito por el señor Cáceres Pizarro el día 8 de octubre de 2024, por lo cual, damos por presentado el recurso en dicha fecha.

Número Identificador

SEN2024 _____

Por los fundamentos que expondremos a continuación, se confirma la determinación recurrida.

**I**

El caso ante nuestra consideración tiene su génesis en una petición del señor Cáceres Pizarro ante la Oficina del Programa de Desvío Comunitario adscrita al DCR. El recurrente peticionó participar del *Programa Religiosos y Seculares*.

Conforme surge del expediente ante nuestra consideración, el recurrente cumple una sentencia de 101 años por los delitos de asesinato en primer grado, robo, conspiración y resistencia u obstrucción a la autoridad pública del Código Penal de Puerto Rico; infracciones a los Artículos 6 y 8 de la Ley de Armas de Puerto Rico; Artículo 2 de la Ley Núm. 115-2011, según enmendada, Ley para Establecer Restricciones al Uso de Teléfonos Celulares a Personas Confinadas en las Instituciones Penales de Puerto Rico, y al Artículo 404 de la Ley Núm. 4-1971, según enmendada, Ley de Sustancias Controladas de Puerto Rico.[...]".[2]

El 1ro. de octubre de 2024, mediante la *Respuesta de la Planilla de Información Necesaria para Evaluar Candidatos para el Programa Religiosos y Seculares*, el DCR, le comunicó al recurrente la denegatoria a su solicitud para participar del *Programa Religiosos*

---

[2] Véase, Anejo III del recurso. El Anejo contiene la *Sentencia* del 23 de julio de 2024 del caso alfanumérico KLRA202400277 en donde el Panel Especial de este Tribunal, compuesto por el Juez Rivera Colón, la Juez Lebrón Nieves y el Juez Rodríguez Flores, atendió el recurso administrativo presentado por el señor Cáceres Pizarro el 14 de mayo de 2024. En ese caso, este Tribunal confirmó la determinación de la Junta de Libertad Bajo Palabra (JLBP) quien emitió lo siguiente en virtud del Art VII sec. 7.4 del Reglamento de la Junta de Libertad Bajo Palabra, Número 9232-2020:

**ORDEN**

La Junta de Libertad Bajo Palabra carece de jurisdicción en el presente caso, debido a que no ha transcurrido el término de dos (2) años naturales desde que se le revocó el privilegio de libertad bajo palabra al peticionario el 6 de diciembre de 2022.

Cítese al peticionario nuevamente una vez hayan transcurrido dos (2) años naturales desde la fecha de la revocación del privilegio de libertad bajo palabra, entiéndase a partir del **6 de diciembre de 2024**.

*y Seculares* adscrito al Programa de Desvío. En particular, consignó lo siguiente:

> "No cumple con criterios de elegibilidad.
>
> Usted incurrió en delitos para el 1 de agosto de 1991, los programas de tratamiento fueron creados para el año 1993 por lo que usted no tenía expectativa de beneficiarse de programas de tratamiento. Conforme a la determinación del Tribunal de Apelaciones para el Primer Circuito de Boston en los casos: Efraín González Fuentes vs Carlos Molina Rodríguez, Caso Núm. 08-1818 y Carmen Rivera Feliciano vs Luis G. Fortuño Burset. Caso Núm. 08-1819.".[3]

El recurrente no presentó recurso de revisión.

El 8 de octubre de 2024, el señor Cáceres Pizarro presentó su *Moción en Solicitud de Revisión Judicial*.[4] Allí, alegó ser paciente de del virus de inmunodeficiencia adquirida (HIV por sus siglas en inglés). Manifestó: "[...] aunque mi pro[g]nosis es buena (vida) mi mayor deseo, es agenciarme una mejor calidad de vida, buscando una mejor atención m[é]dica, junto a mi familia[...].".[5] En su escrito, esgrimió los siguientes señalamientos de error*:*

> Err[ó]: El ente administrativo por cuanto no atemperó los requisitos o exigencias del programa de desvío.
>
> Err[ó]: Que era y es total responsabilidad del Dpto. de Corrección y Rehabilitación atemperar dicho programa que data de su creación es del 1993 habiendo tenido tiempo, recursos y tecnología a su alcance y una gama de nuevas leyes además de una "nueva política pública" del gobierno enfocada en la rehabilitación.
>
> Err[ó]: El ente administrativo cuando la política pública del Estado se fomenta en la Rehabilitación.
>
> Err[ó]: El [E]stado, ente administrativo al ir en clara contradicción de su misión: rehabilitar, y no honrra (sic) su nombre ni su misión que es por ley.

---

[3] Véase, Anejo I del recurso.

[4] La *Moción en Solicitud de Revisión Judicial* fue recibida en el Tribunal de Apelaciones el 18 de octubre de 2024 y traída ante nuestra atención el 29 de octubre de 2024.

[5] *Íd.*, pág. 1. Véase, además, pág. 6 del Apéndice del *Escrito en Cumplimiento de Orden* de la parte recurrida que incluye el *Informe para la Evaluación del Plan Institucional* en donde el DCR incluye un encasillado y nota sobre la alegación del estado de salud del recurrente.

Err[ó]: El ente administrativo al ex[h]i[b]ir una doble vara en materia de rehabilitación convirtiendo su buen nombre en una quimera, una atroz falacia: haciendo de su misión y propósito sagrado una burla. Que la Legislatura [h]a provisto muchos recursos, tanto leyes, recursos económicos, tecnológicos, humanos, unido a una gran gama de profesionales y diversas instituciones públicas y privadas e instituciones sin fines de lucro; para cumplir su sagrada y sacrificada labor; "la rehabilitación".

El 29 de octubre de 2024, mediante *Resolución,* este Tribunal le concedió 10 días al DCR para diligenciar la *Declaración en Apoyo de Solicitud para Litigar como Indigente* (*In forma Pauperis*) con el recurrente y una vez cumplimentada la misma, la entregara a este Tribunal para hacerla formar parte del expediente. De otra parte, le concedimos a la Oficina del Procurador General, hasta el 18 de noviembre de 2024 para presentar su alegato en oposición al recurso.

El 8 de noviembre de 2024, el recurrente presentó su *Solicitud y Declaración para que se Exima de Pago de Aranceles por Razón de Indigencia.*[6] Examinada la misma, mediante *Resolución* emitida el 15 de noviembre de 2024, este Tribunal autorizó al señor Cáceres Pizarro a litigar como indigente, por lo que se le eximió el pago de aranceles.

El 18 de noviembre de 2024, el DCR, representado por la Oficina del Procurador General de Puerto Rico, solicitó un término adicional para finalizar su posición en torno al recurso de revisión del recurrente. Mediante *Resolución* emitida el 21 de noviembre de 2024, esta Curia dispuso el 2 de diciembre de 2024 como fecha final e improrrogable para que la parte recurrida expusieran su posición.

El 2 de diciembre de 2024, la parte recurrida presentó *Escrito en Cumplimiento de Orden.* Sostuvo que el recurrente no cumple con

---

[6] La *Solicitud y declaración para que se exima de pago de aranceles por razón de Indigencia* (Formulario OAT 1480) fue recibida en el Tribunal de Apelaciones el 12 de noviembre de 2024.

los criterios de elegibilidad para el Programa, según planteado en la determinación recurrida. Se remitió a la fecha de la comisión de los hechos delictivos por parte del recurrente para establecer que, a esa fecha, el Programa no existía. Añadió que, la reglamentación vigente y aplicable a los Programas de Desvío Comunitarios excluye textualmente de sus privilegios a personas sentenciadas por delitos graves de primer grado, tal como lo es el caso del recurrente, entre otras exclusiones.[7]

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

**A.** *Estándar de Revisión Judicial de Determinaciones Administrativas*

Según es sabido, los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que, estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados por la Asamblea Legislativa. *OEG v. Martínez Giraud*, 210 DPR 79, 88-89 (2022); *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 114 (2023); *Pérez López v. Depto. Corrección*, 208 DPR 656, 672 (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021).[8] Es por ello, que, tales determinaciones suponen una presunción de legalidad y corrección, que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Íd.*; *OEG v. Martínez Giraud*, supra, pág. 89; *Hernández Feliciano v. Mun. Quebradillas*, supra, pág. 114; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012). No

---

[7] Véase, págs. 4-8, del *Escrito en Cumplimiento de Orden* de la parte recurrida. El DCR invocó el Artículo 16 del Plan Núm. 2-2011, 3 LPRA XVIII y la creación del *Reglamento del Programa Integral de Reinserción Comunitaria* (PIRCO), Reglamento Núm. 9242, de 11 de diciembre de 2020 ("Reglamento Núm. 9242").
[8] Véase también: *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016); *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010).

obstante, tal norma no es absoluta, es por lo que, nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.

En *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la forma siguiente:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que **si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida**. (Énfasis suplido).[9]

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *OEG v. Martínez Giraud*, supra, pág. 89; *Super Asphalt v. AFI y otros*, supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 127 (2019); *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, se limita la revisión judicial a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Pérez López v. Depto. Corrección*, supra, pág. 673; *OEG v. Martínez Giraud*, supra, pág. 89; *Super Asphalt v. AFI y otros*, supra, pág. 819-820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35; *Batista, Nobbe v. Jta. Directores*, supra, pág. 216.

---

[9] Véase *Super Asphalt v. AFI y otros*, supra, págs. 819-820.

Bajo este supuesto, la Sec. 4.5 de la Ley Núm. 38 del 30 de junio de 2017, 3 LPRA 9675, conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), "estableció el marco de revisión judicial de las agencias administrativas". *Rolón Martínez v. Supte. Policía*, supra, pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.,* págs. 35-36; *OEG v. Martínez Giraud*, supra, pág. 89*; Torres Rivera v. Policía de PR*, supra, págs. 626-627; *Hernández Feliciano v. Mun. Quebradillas*, supra, pág. 115; *Batista, Nobbe v. Jta. Directores*, supra, pág. 217; Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Nuestro Máximo Foro, ha expresado que, esta intervención "debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley". *Rolón Martínez v. Supte. Policía*, supra, pág. 36. Siendo así, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Íd.,* pág. 36*; OEG v. Martínez Giraud,* supra, pág. 90; *Super Asphalt v. AFI y otros,* supra, pág. 819-820; *Hernández Feliciano v. Mun. Quebradillas*, supra, pág. 115. Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad. *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627; Sec. 4.5 LPAU, 3 LPRA sec. 9675. No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Rolón Martínez v. Supte. Policía*, supra, págs. 36-37; *Torres Rivera v.*

*Policía de PR,* supra, pág. 627.   El Tribunal Supremo ha dispuesto que, la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales.   *Íd.* págs. 627-628; *OEG v. Martínez Giraud,* supra, pág. 90.   Finalmente, nuestra más Alta Curia ha expresado que, conforme lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve.   Así, "la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia".   *Íd.*, pág. 91.

### B. Programas de desvío

Mediante la aprobación del Plan de Reorganización Núm. 2 de 2011, conocido como el Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011 (Plan 2-2011), se derogó la Ley Orgánica de la Administración de Corrección, Ley Núm. 116 de 22 de julio de 1974 (Ley Núm. 116), 4 LPRA sec. 1101 et seq. La Ley Núm. 116 le confirió al entonces Administrador de Corrección la facultad de aprobar, enmendar y derogar reglamentos internos que propiciaran un proceso de rehabilitación adecuado para asegurarles una mejor calidad de vida a los miembros de la población correccional.

A tenor con lo anterior, el Departamento Corrección promulgó el Reglamento para Establecer el Procedimiento para el Programa de Supervisión Electrónica, Reglamento Núm. 5065 de 3 de junio de 1994 (Reglamento Núm. 5065).   Posteriormente, la Asamblea

Legislativa aprobó la Ley Núm. 49 de 26 de mayo de 1995 (Ley Núm. 49), mediante la cual, se enmendó la Ley Orgánica de la Administración de Corrección. Entre otras cosas, la Ley Núm. 49 dispone que los convictos por asesinato están excluidos de participar en el Programa de Supervisión Electrónica. El Reglamento para establecer el Procedimiento para el Programa de Supervisión Electrónica, Reglamento Núm. 6041 de 26 de noviembre de 1999 (Reglamento Núm. 6041), actualmente anulado, dejó sin efecto el referido Reglamento Núm. 5065.

Con la aprobación del precitado Plan 2-2011, se decretó "como política pública del Gobierno de Puerto Rico la creación de un sistema integrado de seguridad y administración correccional donde las funciones y deberes se armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad, así como a la custodia de los ciudadanos que han sido encontrados incursos en la comisión de un delito o falta y que establezcan procesos de rehabilitación moral y social del miembro de la población correccional o transgresor, a fin de fomentar su reincorporación a la sociedad". Artículo 2, Plan de Reorganización 2-2011. Además, el Artículo 16 del Plan 2-2011, dispone:

> **Artículo 16.  Programas de Desvío**
>
> El Secretario establecerá mediante reglamento los objetivos de cada programa de desvío, cómo habrán de operar, los criterios y condiciones para la concesión de dicho privilegio, así como también los criterios, condiciones y proceso que habrá de seguirse para la revocación del privilegio y administrará los programas de desvío donde las personas convictas puedan cumplir parte de su sentencia fuera de la institución correccional.  La opinión de la víctima habrá de tomarse en consideración como uno de los criterios para conceder el privilegio de ubicar a un miembro de la población correccional en un programa de desvío. No serán elegibles para participar en los programas de desvío establecidos por el Departamento las siguientes personas:
>
> > (a) Toda persona convicta que esté cumpliendo sentencia por los siguientes delitos:

[. . .]

(2) toda persona convicta por delito grave de segundo grado o de un delito de mayor severidad;

[. . .]

## C. *Reglamento del Programa Integral de Reinserción Comunitaria del 11 de diciembre de 2020*

En consonancia con lo anterior, el 17 de febrero de 2015, se aprobó el Reglamento 8559[10], conocido como el Reglamento del Programa Integral de Reinserción Comunitaria. El referido Programa tiene como propósito la rehabilitación de los que han delinquido, sin menoscabar la seguridad pública.

Mediante la aprobación del Plan de Reorganización Núm. 2 de 2011, conocido como el Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, 3 LPRA, Ap. XVIII, Art. 1 *et seq.* (Plan Núm. 2-2011), se decretó como política pública "la creación de un sistema integrado de seguridad y administración correccional donde las funciones y deberes se armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad, así como a la custodia de los ciudadanos que han sido encontrados incursos en la comisión de un delito o falta y que establezcan procesos de rehabilitación moral y social del miembro de la población correccional o transgresor, a fin de fomentar su reincorporación a la sociedad". 3 LPRA, Ap. XVIII, Art. 2.

El 11 de diciembre de 2020, el Departamento de Corrección y Rehabilitación promulgó el Reglamento Núm. 9242 conocido como el *Reglamento del Programa Integral de Reinserción Comunitaria.*[11] El referido Programa tiene como propósito la rehabilitación de los que han delinquido, sin menoscabar la seguridad pública.

---

[10] Este Reglamento fue enmendado por el Reglamento 9242, aprobado el 11 de diciembre de 2020. Para los efectos del caso de autos, es aplicable el Reglamento 8559, al que haremos referencia.

[11] El *Reglamento del Programa Integral de Reinserción Comunitaria*, Departamento de Corrección y Rehabilitación, Núm. 9242 de 11 de diciembre de 2010 deroga el Reglamento Núm. 8559 de 17 de febrero de 2015.

El Artículo VI del precitado Reglamento, establece los criterios de elegibilidad general para este Programa. Entre estos requisitos se encuentran:

1. El miembro de la población correccional deberá estar clasificado en custodia mínima, excepto los casos que se evalúan para un pase extendido por condición de salud.

[…]

9. En los casos que el miembro de la población correccional haya incurrido en el delito de fuga o en la comisión de un nuevo delito, deberá haber transcurrido un mínimo de tres (3) años de haber sido sentenciado por dicho delito para ser considerado nuevamente para la evaluación de algún Programa de Desvío y Comunitario. Además, el candidato tendrá que haber completado el tratamiento recomendado en su Plan Institucional posterior a la sentencia del delito de fuga.

[…]

10. En los casos que el miembro de la población correccional haya incurrido en una primera violación a las normas y condiciones de algún Programa de Desvío y Comunitario, podrá ser considerado luego de haber transcurrido un mínimo de dieciocho (18) meses. Además, tendrá que haber completado el tratamiento recomendado en su Plan Institucional posterior a la revocación del privilegio anterior. No será considerado favorablemente ningún candidato que haya incurrido en más de una violación y revocación final de algún Programa de Desvío y Comunitario.

A su vez, en su Artículo VIII, el aludido Reglamento dispone que no serán elegibles para participar del Programa de desvío los convictos que cumplan sentencia por delito grave de segundo grado o por un delito de mayor severidad.

El Artículo VII del Reglamento muestra los criterios de elegibilidad para programas específicos, en donde se incluyen los *Programas Comunitarios de Base Religiosa*. La evaluación del solicitante al programa estará sujeta al siguiente examen:

[…]

a. El candidato deberá tener un historial previo de usos y abuso de sustancias controladas o alcohol.

b. Se requiere que le candidato muestre y verbalice voluntariedad e interés en beneficiarse del programa de tratamiento, posea disposición de ser integrado al

tratamiento interno, y estar comprometido con cumplir las normas impuestas por el Departamento y por el centro de tratamiento.

c. Le deberá restar para cumplir el mínimo de la sentencia dos (2) años o menos, y restarle cinco (5) años o menos, para extinguir la totalidad de la sentencia impuesta.

d. Deberá tener un estado de salud físico que le permita asumir todas las responsabilidades necesarias para el cumplimiento de su proceso rehabilitativo.

[…]

Entre las exclusiones desglosadas en el Artículo VIII del Reglamento figuran:

No serán elegibles para participar de los programas de Desvío establecidos por el Departamento las siguientes personas:

1. Toda persona convicta que esté cumpliendo sentencia por los siguientes delitos:

[…]

c. Toda persona convicta por delito grave de segundo grado o de un delito de mayor severidad.
[…]

Se podrá excluir de la aplicación de las disposiciones de este Artículo a los miembros de la población correccional bajo la custodia del Departamento que confronten problemas de salud con prognosis de vida corta, con condiciones fisiológicas limitantes o incapacitantes. Para que proceda esta exclusión deberá mediar una recomendación del Departamento acompañada de una certificación médica sobre el miembro de la población correccional referente a la prognosis de vida. Además, los miembros de la población correccional que sean evaluados por condiciones de salud física limitantes o incapacitantes y con poca prognosis de vida, no deberán representar peligro para la comunidad, su seguridad ni la de su recurso familiar.

**III**

En sus señalamientos de error, el señor Cáceres Pizarro nos plantea, en esencia, que erró DCR al no atemperar los requisitos del programa de desvío a las nuevas leyes y no honrar la política pública del Estado que fomenta la rehabilitación. Lo anterior, al negarle una herramienta vital en el proceso de rehabilitación al recurrente.

Conforme surge del expediente ante nuestra consideración, mediante la *Respuesta de la Planilla de Información Necesaria para Evaluar Candidatos para el Programa Religiosos y Seculares*, emitida el 17 de septiembre de 2024 y notificada el 1 de octubre de 2024, el ente administrativo recurrido denegó la petición del recurrente de participar en dicho programa.

En el recurso de marras, surge del expediente que el señor Cáceres Pizarro se encuentra actualmente en un período de recualificación ante la Junta de Libertad Bajo Palabra al amparo del Art VII sec. 7.4 del Reglamento de la Junta de Libertad Bajo Palabra de 18 de noviembre de 2020.[12] El precitado Reglamento – aplicado al caso del recurrente, quien gozó del privilegio de libertad bajo palabra desde el 6 de noviembre de 2018, hasta el 1 de septiembre de 2021–, dispone en lo pertinente lo siguiente:

Sección 7.4 – Casos Revocados

[...]

C. Cuando la Junta revoque el privilegio y el peticionario se encuentre cumpliendo una sentencia de reclusión perpetua o una sentencia por noventa y nueve (99) años o más, la Junta adquirirá jurisdicción nuevamente cuando el peticionario cumpla dos (2) años naturales de reclusión a partir de la revocación.

Los Programas Comunitarios de Base Religiosa del precitado Artículo VIII del Reglamento del Programa Integral de Reinserción Comunitaria, Reglamento Núm. 9242, *supra*, aunque incluyen componentes relacionados con tratamiento y alternativas de extinción de sentencia, excluyen de su participación a personas convictas por delitos graves de primer grado.

Habida cuenta que, el señor Cáceres Pizarro extingue una pena por asesinato en primer grado (delito grave), entre otros delitos, resulta inelegible para participar en el aludido programa.

---

[12] El referido Reglamento deroga el Reglamento Núm. 8495 de 4 de junio de 2014 y el Reglamento Núm. 7799 de 21 de enero de 2010.

Consecuentemente, no erró la agencia recurrida al determinar la inelegibilidad del recurrente, según la información en el expediente y la aplicación del derecho vigente.

**IV**

En mérito de lo anterior, se confirma la determinación recurrida.

Notifíquese a las partes, al Procurador General y al Secretario del Departamento de Corrección y Rehabilitación. El Administrador de Corrección deberá entregar copia de esta *Sentencia* al confinado, en cualquier institución donde este se encuentre.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones